# 13-1123(L)
# 13-2356(con)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

--------------------------------------------------------------------------

Kevin Watkins,
Plaintiff- Appellant,

v.

Derek Smith, Adriane Eisen, Bryan S. Arce, William K.
Phillips, Ismail S. Sekendiz, Laurie E. Morrison, Zafer
A. Akin, Marjorie Mesidor, Derek T. Smith Law
Group, P.C., Arce Law Group, PC, Philips & Phillips,
Jessica Dugue,
Defendants - Appellees.

--------------------------------------------------------------------------

**Appellant's Amended Brief**

Anil Taneja, Esq., M.B.A. (AT-1760)
Attorney for Petitioner
244 5th Avenue 2nd Floor
New York, NY 10001
(646) 335-3256

# Table of Contents

Table of authorities....................................................................................4

Jurisdictional statement .........................................................................6

Statement of the issues presented for review ...................................6

Statement of the Case............................................................................11

Statement of Facts .................................................................................11

Summary of the Argument ...................................................................21

Argument...................................................................................................22

    The district court exhibited bias against plaintiff-appellant...............22

    The district court improperly opened the defendant-appellees'
    defaults .................................................................................................28

    Improper weight was given to defendant-appellee's sworn and
    unsworn statements .............................................................................30

    The district court erred in not allowing plaintiff-appellant to
    participate, ask questions or object at the recusal hearing ...............35

    The district court erred in granting sanctions as there was no
    proper safe harbor letter by any of the defendant-appellees ..............35

    The district court erred in granting sanctions by failing to
    have oral argument................................................................................36

    The district court erred in granting sanctions as there is
    merit to the complaint .........................................................................37

    The district court erred in noting the August 6, 2012, offer to discontinue
    without prejudice..................................................................................38

The district court erred in not properly weighing the
August 6,2012 offer to discontinue without prejudice........................38

Conclusion.......................................................................................39

## Table of Authorities

American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.
    92 F.3d 57 (C.A. 2 1996).........................................................................29

Commercial Cleaning Service v. Colin Serv. Sys.
    271 F3d 374 (2d Cir 2001) ...........................................................32, 33

Dresses For Less, Inc. v. CIT Group/Commercial Servs., Inc.
    2002 WL 31164482 (S.D.N.Y.) ...........................................................34

Enron Oil Corp v. Diakuhara, 10 F.3d 90 (C.A.2 1993)...................28, 29, 30

Fishoff v. Coty, 643 F3d 647 (2d Cir 2011).....................................................37

George C. Frey Ready-Mixed Concrete, Inc. v.
    Pine Hill Concrete Mix Corp., 554 F.2d 551 (2d Cir.1977).................34

George Haug Co. v. Rolls Royce Motor Cars, Inc.
    148 F.3d 136 (2d Cir.1998) .....................................................................34

Goldfarb v. Virginia State Bar, 421 U.S. 773 (1979)....................................23

Hall v. Small Business Admin., 695 F. 2d 175 (5th Circuit 1983) ..............29

Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738,
    96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)....................................................34

In re Nine West Shoes Antitrust Litig.,
    80 F.Supp.2d 181(S.D.N.Y.2000) .........................................................34

Liteky v. U.S., 510 U.S. 540 (1994)................................................................29

Margo, Seigel, et al. v. Weiss, Peretti, et al.
    213 F3d 55, 64 (2d Cir 2000) ..................................................................36

Matter of Yao, 250 A.D.2d 221 (1st Dept 1998) ....................................14, 27

New York v. Green, 420 F.3d 99 (C.A. 2 2005) ............................................29

Schlaifer Nance & Amp v. Estate of Warhol,
   194 F3d 323, 335 (2d Cir 1999) ...........................................37

Sony Corp. v. Elm State Electronics, Inc.,
   800 F.2d 317, 320 (C.A. 2 1986) ...........................................29

Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379 (1963)..........................23

Storey v. Cello Holdings, 347 F3d 370 (2d Cir 2003) .................................37

Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001) .............................34

United States v. Walgren, 885 F.2d 1417(9th Cir. 1989)............................38

## Statutes

Administrative Procedure Act , 5 U.S.C. §555(b) .......................................23

The Judiciary Act, 28 U.S.C. §1291, §1331 ..................................................6

## Rules

Federal Rules of Civil Procedure, Rule 15(a)(3)..........................................16

## Jurisdictional Statement

The district court had jurisdiction pursuant to original jurisdiction under 28 U.S.C. §1331. This court has appellate jurisdiction pursuant to 28 U.S.C. §1291.

The district court issued a final opinion and order resolving all issues except disqualification, consolidation, and sanctions on November 19, 2012. On February 22, 2013, the district court sanctioned plaintiff-appellant's counsel by opinion and order. Appellant and his counsel filed a timely notice of appeal on March 22, 2013. On May 13, 2013, the district court issued an order setting the amount of sanctions. On June 12, 2013, plaintiff-appellant and his counsel filed a second timely notice of appeal of the attorney's fee order and from the final judgment in this matter.

## Statement of the issues presented for review

1.     Did the District Court err as a matter of law when it opened defendant-appellees' defaults without allowing the plaintiff an opportunity to be heard?

This question is subject to de novo review.

2.     Did the district court err as a matter of law by repeatedly requiring plaintiff-appellant to produce memoranda of law in tight time frames while repeatedly staying defendant-appellees from filing answering memoranda?

This question is subject to de novo review.

3.     Did the district court err as a matter of law when it failed to immediately stay the proceedings once the opposing counsel's conflicts of interest were raised before it?

This question is subject to de novo review.

4.     Did the district court err as a matter of law by allowing defendant-appellees to repeatedly violate the Federal procedural, state ethics, and Local Court Rules?

This question is subject to de novo review.

5.     Did the district court err as a matter of law in dismissing the plaintiff-appellant's action on the basis of unsworn statements by the defense which were affirmatively disproved by the district court's own docket sheet and prior to discovery?

This question is subject to de novo review.

6.     Did the district court err as a matter of law in dismissing the plaintiff-appellant's federal claims for not pleading information which only the defendant-appellees could possibly possess?

This question is subject to de novo review.

7

7.     Did the district court err as a matter of law when it denied plaintiff-appellant's motions without allowing the plaintiff-appellant an opportunity to be heard?

This question is subject to de novo review.

8.     Did the district court err as a matter of law when it sanctioned plaintiff-appellant's attorneys for not withdrawing the case based on defendant-appellees' unsworn hearsay statements that they were not involved?

This question is subject to de novo review.

9.     Did the district court err as a matter of law when it denied plaintiff-appellant's motion to disqualify itself based on open, blatant bias against the plaintiff-appellant and his counsel?

This question is subject to de novo review.

10.    Did the district court err as a matter of law by allowing conflicted defense counsel to continue appearing without immediately holding a hearing on the issue?

This question is subject to de novo review.

11.     Did the district court err as a matter of law by failing to consolidate the defendant-appellee's counterclaim brought as a separate action in state court after defendant-appellees removed to federal court?

This question is subject to de novo review.

12.     Did the district court err as a matter of law by sanctioning plaintiff-appellant's counsel on the basis of frivolousness when, even under the district court's own order, the state claims survived and in open court the district court urged the parties to pursue the matter in state court?

This question is subject to de novo review.

13. Did the district court err as a matter of law by considering motions to dismiss and motions for sanctions that were filed by the defendant-appellees while the defendant-appellees were still in default?

This question is subject to de novo review.

14. Did the district court err as a matter of law by, in fact and at the request of the defendant-appellees, sanctioning plaintiff-appellant's counsel for filing the petition for mandamus relief to the Second Circuit?

This question is subject to de novo review.

15.     Did the district court err as a matter of law when it awarded defendant-appellees' attorneys fees, without a hearing, without discovery, simply on the openly false statements of defendant-appellees' counsel that some of the defendant-appellees "were not involved"?

This question is subject to de novo review.

16.     Did the district court err as a matter of law by using an email exhibit to find that plaintiff-appellants' counsel had not continued an offer to discontinue without prejudice to renew against "uninvolved" defendant-appellees, while ignoring the email showing the defendant-appellees' direct, unequivocal rejection of the plaintiff-appellant's discontinuance offer?

This question is subject to de novo review.

17.     Did the district court err as a matter of law by awarding attorneys fees for defendant-appellees' while the defendant-appellees' were in default and the case was defaulted by the court clerk?

This question is subject to de novo review.

## Statement of the Case

This is an appeal of a final order and judgment of the Honorable Denise Cote of the United States District Court for the Southern District of New York. This matter was filed in New York state court seeking damages for racketeering and antitrust violations under state and federal law, and exclusively state law claims. The matter was removed to federal court by the defendant-appellees. The defendant-appellees defaulted in answering the plaintiff-appellant's amended complaint while issuing numerous threats to plaintiff-appellant's counsel. The district court opened the defaults without a finding of excusable neglect. The district court failed to address a motion to disqualify defense counsel. After plaintiff-appellant filed a petition for mandamus the district court issued an order dismissing the federal issues of the complaint. The district court declined to recuse itself and issued sanctions against plaintiff-appellant's attorneys. This appeal followed.

## Statement of Facts

Plaintiff-appellant, Kevin Watkins, is an individual authorized by New York State to provide representation services to claimants before the Unemployment

Insurance Appeal Board (Appeal Board). He also provides representation services to complainants before the Equal Employment Opportunity Commission (EEOC). Defendant-appellees compete with the plaintiff-appellant within the same market. All of the defendant-appellees are attorneys who advertise and engage in representing clients before the EEOC.

On or before August, 1, 2011 and continuing to the present, defendant-appellees began trying to harm plaintiff-appellant's business in various ways including falsely advertising that they did unemployment cases and sending operatives to plaintiff-appellant's office posing as prospective clients who then would not appear at their hearings.

On or about February 2, 2012, the defendant-appellees sent an operative to plaintiff-appellant's office posing as a client. She signed two retainer agreements. One to represent her at her February 6, 2012, unemployment hearing before the Appeal Board, and the other to pursue her complaint against her employer before the EEOC. On February 6, 2012, the plaintiff-appellant appeared at the hearing location and the defendant-appellees' operative did not. The matter was defaulted due to her non-appearance. After making several unsuccessful attempts to get documents with which to reopen the matter, the plaintiff-appellant officially withdrew as the operative's representative before the Appeal Board. Under New

York law attorneys and representatives are not allowed to charge a fee for unemployment representation unless they win the unemployment case.

On or about February 16, 2012, the defendant-appellees' operative came to plaintiff-appellant's office wearing a hidden recording device to try and convince him to reenter an appearance on the unemployment matter. He unequivocally refused. He was open to continuing his representation of her EEOC matter provided she paid the full retainer she had agreed upon on February 2, 2012. Despite posing as a destitute and desperate claimant, she boasted about her current luxury items and planned luxury purchases. She tried to convince him change his mind and to waive or lower his fees in return for sexual favors. The plaintiff-appellant refused, instead telling her to sell a luxury item and pay his retainer.

On or about that same time, defendant-appellees began to interfere with another client represented by the plaintiff-appellant before the EEOC and the Merit Systems Protection Board (MSPB). That client called plaintiff-appellant and told him that the defendant-appellees would be taking over as his attorneys. Plaintiff-appellant contacted the defendant-appellees and confirmed their meeting with his client and then he withdrew from representing that client before the MSPB. Defendant-appellees left a message informing plaintiff-appellant that they, in fact, would not represent the MSPB client and would be sending a letter to plaintiff-appellant to that effect. On or about May 16, 2012, plaintiff-appellant received a

13

Fed Ex envelope from the defendant but did not open it immediately as he assumed it was the letter to the MSPB declining the case.

On or about May 20, 2012, plaintiff-appellant opened the Fed Ex envelope and found a extortion letter from defendant-appellees demanding "settlement" of their operative's alleged claims, under threat of public exposure of the false and embarrassing claims if plaintiff did not "settle" by May 25, 2012 (the first day of Memorial Day weekend and less than 7 business days from the date of receipt and 5 days from its opening). The document was sent using a facility in interstate commerce in New Jersey before it was delivered to plaintiff in New York.

The main action below was commenced on May 25, 2012 by plaintiff-appellant's service of a state court complaint against the defendant-appellees. Plaintiff-appellant's complaint alleged that the defendant-appellees conspired to extort plaintiff-appellant and unfairly and anti-competitively ruin his representation business along with other related state law causes of action. The defendant-appellees removed the action to the Southern District of New York (Watkins v. Smith, et al., 12 cv 04635 (DLC)) in an effort to avoid the anti-extortion standards of the New York State Supreme Court First Department (Matter of Yao, 250 A.D.2d 221 (1st Department 1998)). Then after the deadline, they filed motions to dismiss the state complaint for failing to meet federal pleading standards. In their motions to dismiss they included an audio file of the single incident of alleged

14

harassment secretly recorded by them. While plaintiff-appellant strongly protests that this recording is doctored (the file actually identifies its contents as modified in March), even as doctored it clearly shows that the plaintiff-appellant was not engaged in any harassment or quid pro quo arrangement. In fact, it shows that the defendant-appellees made an offer of prostitution that was rejected by plaintiff-appellant.

On July 27, 2012 plaintiff-appellant filed an amended complaint as required by the district court's court order (appx. p. 6, dkt. 15) and served the defendant-appellees in the manner required by the local rules. While the defendant-appellees served and filed motions for sanctions, safe harbor letters, and a stream of threats to plaintiff-appellant's counsel, they did not answer or move against the complaint.

On August 20, 2012, the court clerk entered a Certificate of Default against all of the defendant-appellees (appx. 7 dkt. 21) In response, the defendant-appellees contacted plaintiff-appellant's counsel and chambers to falsely accuse the plaintiff-appellant of having tricked the court clerk into entering the default under FRCP Rule 15(a)(3) (requiring a response to amended complaints within 14 days). They filed motions for sanctions against plaintiff-appellant and his counsel and motions to vacate the defaults.

During this period the defendant-appellees began to threaten plaintiff-appellant's counsel by overtly stating that Judge Cote's law clerk, identified by defendant-appellees' counsel as Ms. Hughes, was going to warn them about the consequences of having "tricked" the court clerk into following FRCP Rule 15(a)(3). This included an email from defendant-appellees' counsel stating that Ms Hughes had set up a telephone conference (appx. 200). The defendant-appellees' counsel left voice messages implying that the conference was to "correct" plaintiff-appellant's behavior. The defendant-appellees' statements claiming ex parte communications on the merits with chambers was not initially a concern to the plaintiff-appellant as we had become aware that the judge was most likely on vacation at that time, and the plaintiff-appellant felt that the judge would correct the wayward law clerk's procedural and ethical errors when she returned from vacation.

Instead, within the first hours of her return from vacation, on September 4, 2012, the judge permanently granted the defendant-appellees' motions to vacate the default (appx. 25) without a finding of excusable neglect, without explanation, and without allowing plaintiff-appellant an opportunity to respond despite the fact that plaintiff-appellant was still within the time allowed by rule to do so. The district court's action was completely devoid of due process. The district court's

order was based solely upon defendant-appellees' ex parte communications with chambers and defendant-appellees' motion papers.

Not having had an opportunity to respond to the false allegations of "tricking" the clerk, on September 5, 2012, Petitoner filed a motion for a finding that defendant-appellees had violated the FRCP, the SDNY local and electronic filing rules (appx. 28). This motion was denied immediately on September 5, 2012. However, the District Court allowed the defendant-appellees' facially frivolous sanctions motions to continue briefing undisturbed.

On September 7, 2012, in an unrelated case in the Eastern District of New York, Judge Cogan sanctioned the associate (opposing counsel Jesse Rose and defendant-appellee firm Phillips & Phillips) of one of the defendant law firms for misrepresenting to the court that a former prostitute was an ingenue (appx. 55, 56).

On or about September 15, 2012, defendant-appellees served plaintiff-appellant's counsel with a copy of a state court complaint against plaintiff-appellant setting forth a counterclaim mirroring their defense in the District Court action and matching the threat that prompted the plaintiff-appellant's filing of his action. The defendant-appellees' new state court complaint exactly matched the same common nucleus of operative fact as the issues the defendant-appellees had removed to the district court in the main action.

On October 4, 2012, plaintiff-appellant filed a proposed order to show cause to disqualify defendant-appellees' counsel due to their blatant conflict of interest as defendant-appellees in the action before the court (appx 49). In addition, it had become apparent that the defendant-appellees' counsel were not in contact with their fellow defendant (their operative Jessica Dugue) as they were unaware of her method of service and that the address they used for her was fictitious (appx. 53). In addition, they submitted affirmations stating her testimony not signed by her. Finally, in their response papers to our opposition, in which we noted that it was likely they did not have contact with their client/ operative, they did not deny it.

On October 4, 2012 the District Court denied the order to show cause (appx. 48). The District Court also filed a sua sponte order requiring plaintiff-appellant to refile the disqualification motion with a formal memorandum within 7 days while granting the defendant-appellees more than a month to respond (appx. 21).

On October 12, 2012, plaintiff-appellant refiled the disqualification application as a motion with a full memorandum of law demonstrating the blatant ethical violations of defendant-appellees and their counsel (appx. 11, dkt 56). Plaintiff-appellant also filed a petition to remove the defendant-appellees' identical state court action to the District Court Dugue v. Watkins, 12 cv 07659 (DLC).

On October 16, 2012, the District Court sua sponte ruled that the defendant-appellees' motions to dismiss were fully submitted on October 5, 2012, and relieved the defendant-appellees of the duty to respond to the motion to disqualify altogether (appx. 27).

On October 19, 2012, the district court accepted the cases as related and the plaintiff-appellant filed a motion to dismiss the defendant-appellees' duplicate case or to consolidate the cases accompanied by a memorandum of law (appx. 12 dkt 60-62).

On October 23, 2012, Judge Barbara Jones, signing as Judge Cote, sua sponte stayed the motion to consolidate (appx. 12 dkt. 63). Judge Barbara Jones again signing as Judge Cote also sua sponte issued an order to show cause why the defendant-appellees' duplicate case filed in August,[1] accepted as related only four days earlier, should not be remanded instead of being decided with the within case removed by defendant-appellees in June (Dugue v. Watkins, 12 cv 07659 (DLC)).

On November 16, 2012, the plaintiff-appellant filed a petition for a writ of mandamus seeking to have the district court review and correct the various orders (In re Watkins a/k/a Ronin Amano, Second Circuit Case # 12-4525)).

The next business day the district court issued an order dismissing the case (appx. 29 - 47).

On November 20, 2012, the plaintiff-appellant filed a motion to disqualify the judge.

On December 6, 2012, the motion to disqualify the judge was set for a motion hearing, but the plaintiff-appellant was not able to participate or object and not allowed to question his own witness (counsel) while his counsel was called to the stand by the judge (appx. 175 - 177). The district court denied the motion to disqualify itself.

Under the threat of sanctions from the bench, the plaintiff-appellant withdrew all of his outstanding motions while all of the defendant-appellee' motions were continued.

Thereafter, on February 22, 2013, the district court ordered sanctions against the plaintiff-appellant's counsel but did not determine the amount.

On March 21, 2013, the plaintiff-appellant filed a notice of appeal of the final order and all intermediary orders (appx. 3). The notice of appeal explicitly

---

[1] The separately filed counterclaim was removed from state court to federal court by plaintiff-appellants. The defendant-appellees filed an affidavit in state court claiming service was made on a date while the case was removed to federal court so that case is a nullity.

names plaintiff appellant's attorneys and identifies their appeal of the district court's February 22, 2013 order imposing sanctions.

On May 10, 2013, the district court entered an order for sanctions in the amount of $14,990 (appx. 116).

On May 13, 2013, the clerk entered judgment (appx 148).

On June 12, 2013, the plaintiff-appellant filed a notice of appeal of the sanction fee order and the final judgment (appx. 152). The notice of appeal explicitly names plaintiff appellant's attorneys and identifies their appeal of the district court's May 10, 2013, order imposing sanctions.

## Summary of the Argument

The district court demonstrated bias and prejudice in various ways throughout the litigation below including directly taking over the defendant-appellee' defense and filing sua sponte motions on an emergency basis using another judge to sign the papers. In addition the district court vacated defendant-appellee's defaults without regard to Second Circuit's standards, without making findings of fact or a finding of excusable negligence, and without allowing the plaintiff-appellant to be heard in opposition to the motion. The district court further

appears to have improperly considered exhibits and an audiodisk submitted by the defendant-appellees in their motion to dismiss and otherwise without allowing the plaintiff-appellant to address at hearing or otherwise probe the integrity of the submitted items, and without leaving a record of these items for this Court to review. The district court further erred by not allowing the plaintiff-appellant to participate in the hearing on the issue of recusal. The district court also sanctioned the plaintiff-appellant's counsel without regard to the Second Circuit standards. Plaintiff-appellant hereby incorporates by reference all arguments made by him in the district court.

## **Argument**

### **The district court exhibited bias against plaintiff-appellant**

In multiple instances the district court exhibited bias and prejudice against the plaintiff-appellant. In several instances the district court blatantly became the defendant-appellee' advocate. From one order to the next the district court did not try to hide blatant bias until after the plaintiff-appellant's petition for mandamus was filed on November 16, 2012 (In re Watkins a/k/a Ronin Amano, Second Circuit Case # 12-4525)), and then it immediately proceeded to dismiss the plaintiff-appellant's amended complaint. As stated in the plaintiff-appellant's

mandamus petition, there is no justification for such bias against a non-attorney authorized to represent people in administrative hearings. It is well settled that the United States and its agencies are able to allow non-attorney representatives before them and that the United States has chosen to do so under the Administrative Procedure Act (5 U.S.C. 555(b)). It is also well settled that the states and their bar associations, and attorneys are not allowed to in any way to interfere or harass these non-attorney practitioners (Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379 (1963)). In addition, bar associations and attorneys are subject to the antitrust laws according to no less an authority than the United States Supreme Court in Goldfarb v. Virginia State Bar, 421 U.S. 773 (1979).

This bias seems to have been precipitated by the Eisein defendant-appellee's filing of exhibits including a doctored audio disk. Those exhibits included an audio disk which is now missing from the record. Given that these exhibits were submitted with a dismissal motion the district court should have officially treated the dismissal motion and a summary judgment motion and created a record of the items submitted. By not doing so the district court has exposed itself to items on the record not reviewable by this Court and allowed its overt appearance of bias thereafter to be tainted by these items (and possibly by ex parte items as plaintiff-appellant has no way to tell exactly what was on the disk submitted to the district court by the defendant-appellee).

23

The first overt act of bias was the vacatur of the defendant-appellees' default without allowing plaintiff-appellant an opportunity to respond, without a finding (or request for a finding) of excusable neglect, and without any explanation or analysis at all (as more clearly detailed below). The district court explained months later that it was only seeking to reach the merits (appx. 203) ironically while having just filed an order in defendant-appellees' favor avoiding the merits (appx. 29 - 47, November 19, 2012 order).

The second overt act was the sua sponte denial of the plaintiff-appellant's motion for contempt (appx. 28) against defendant-appellees for their repeated failure to follow the various court and procedural rules and their hostile use of such failure to harass the plaintiff-appellant two hours after it was filed (on the same day the plaintiff-appellant's response to the motion to vacate would have been due).

The third overt act was the district court's summary rejection of a timely filed application for an order to show cause regarding the defendant-appellee' disqualification (appx. 48). Instead the district court issued a scheduling order giving plaintiff-appellant only one week to submit a formal memorandum and allowing defendant-appellee' over a month to respond (appx. 21). Shortly thereafter, the district court sua sponte relieved the defendant-appellee' of any response whatsoever (appx. 27). Instead of treating the motion to disqualify as a priority motion the district court relegated the issue to a calendat "limbo". By

24

doing so the district court clearly signaled that ethical violations and dilatory tactics against the plaintiff-appellant were both allowed and encouraged.

The fourth overt act was the district court's October 23, 2012, sua sponte stay (appx. 12 dkt. 63)  of plaintiff-appellant's motion to consolidate the within action with the related counterclaim brought by the defendant-appellees which had been removed from state court. The main action within was removed by defendant-appellee from state court. Nonetheless, despite their having selected the federal forum, the defendant-appellees brought a counterclaim to the within action (with the same common nucleus of operative fact) in state court. That action was removed by the plaintiff-appellant to federal court and accepted as a related case (Dugue v. Watkins, SDNY 12 cv 07659 (DLC)). The plaintiff-appellant filed a motion to consolidate the actions.  Instead the district court sua sponte issued an order to show cause as to why the related case should not be remanded to state court. The district court further issued an order staying the motion to consolidate pending its determination of its own order to show cause in the second case (appx. 12 dkt. 63).[2]

---

[2] The defendant appellees refused to appear at all in the removed matter. This tactic gives the appearance that the defendant-appellees and the district court were in close communication. Without the district court's sua sponte litigation of the second case on the defendant-appellees' behalf it would have been dismissed outright.

Most problematic was that both October 23, 2012, orders were signed by the Honorable Barbara Jones signing as the Honorable Denise Cote (appx. 12 dkt. 63) which is highly suggestive of prejudicial bias on the part of Judge Cote. How, without prejudice and pre- judging, could Judge Cote have decided to stay a non-urgent civil motion, in absentia, and issue an order to show cause to remand a related case? The only other explanation is that her law clerk made the determination and was the source of the prejudice and tricked Judge Jones into signing the orders to show cause. Judge Cote claims that that was not the case (appx. 200).

The fifth overt act was putting plaintiff-appellant's attorney on the witness stand and barring plaintiff-appellant from participating in the hearing of his own motion (appx. 175 - 177). This deprived him of due process by blocking his right to examine his own witness on direct. The only person allowed to ask questions was the judge. At the hearing there was a strong threat of sanctions, not for actual sanctionable conduct, but rather to discourage any further attempts to access appellate review.[3]

In short, the district court engaged in unfair scheduling orders and requirements, exempted the defendant-appellees from following any local court rules, Electronic Court Filing rules, or federal procedural rules, and issued sua sponte orders and snap decisions in favor of the defendant-appellees. At all times the district court has failed to be impartial and hear plaintiff-appellants' procedural or substantive arguments or defenses. By doing so the district court has become the defendant-appellees advocate in fact and shed all pretense of impartiality.

In addition, the district court's encouragement of the defendant-appellees issue by issue forum shopping is unconscionable error particularly in the context of the defendant-appellees having removed the plaintiff-appellant's state court complaint to the Southern District in the first place. This is even more egregious when it appears that it was a tactic to avoid the New York's strong precedent punishing attorneys engaged in extortion (Matter of Yao, 250 A.D.2d 221 (1st Dept 1998)).

"Judicial ethics reinforced by statute exact more than virtuous behavior; they command impeccable appearance. Purity of heart is not enough. Judges' robes must be as spotless as their actual conduct. These expectations extend to those who

---

[3] The plaintiff-appellant had filed his petition for a writ of mandamus a few weeks earlier.

make up the contemporary judicial family, the judge's law clerks and secretaries."
<u>Hall v. Small Business Admin.</u>, 695 F. 2d 175 (5th Cir. 1983)

Judicial conduct prompted by extensive ex parte contacts will support a bias or partiality challenge when "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." <u>Liteky v. U.S.,</u> 510 U.S. 540 (1994).

## **<u>The district court improperly opened the defendant-appellees' defaults</u>**

District court improperly opened defendant-appellees' default in failing to answer or move against the amended complaint. Without allowing plaintiff-appellant to be heard, without following the requirements, and without any attempt to correct Defendant-appellee' errors. The defendant-appellees' persisted in claiming they did not default in their papers supporting their motions for sanctions months afterward. While this Court has found there to be a valid use for defaults to prevent abusive conduct (see e.g. <u>Enron Oil Corp v. Diakuhara,</u> 10 F.3d 90, 96

(C.A.2 1993)). Here the district court has simply discarded all rules and standards of conduct in favor of convenience for its favored party.[4]

The standard to vacate a default includes a finding of "excusable neglect" (American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57 (C.A. 2 1996)), with a consideration of willfulness, meritorious defense, and prejudice to the non-defaulting party ("The basic purpose of the default is to protect parties from undue delay-harassment." New York v. Green, 420 F.3d 99 (C.A. 2 2005)).  "Default procedures, of course, provide a useful remedy when a litigant is confronted by an obstructionist adversary." (Enron Oil Corp v. Diakuhara, 10 F.3d 90, 96 (C.A.2 1993)). "The district court failed explicitly to balance these factors against the competing interest in maintaining 'an orderly efficient judicial system' in which default is a useful weapon 'for enforcing compliance with the rules of procedure." (Sony Corp. v. Elm State Electronics, Inc., 800 F.2d 317, 320 (C.A. 2 1986)).

It is important that the district court provide and explanation for its actions on default vacatur motions. "The absence of an explanation defeats intelligent

---

[4] While not dispositive, very similar favoritism by this judge has been documented in another matter currently before this Court. (In re FHFA Coordinated Securities Litigation, Second Circuit No. 13-1122)

appellate review" (<u>Enron</u>, supra). "[T]he [appellate] court may review both the interlocutory entry of default and the final judgment." (<u>Enron</u> at 95).

Not following the standard prevents meaningful review of the district court determination. In this matter the district court provided no explanation whatsoever. In addition, the defendant-appellees did not attempt to provide any explanation or claim of excusable neglect.

While the matter was defaulted the defendant-appellees filed motions for sanctions and to dismiss the complaint. Those motions should not have been allowed or considered filed until after the default was vacated as they should have been nullities in a defaulted matter.

This is particularly true when the defendant-appellees cheated plaintiff-appellant of his forum choice and then willfully violate the rules of their own selected forum.


**<u>Improper weight was given to defendant-appellee's sworn and unsworn</u>**

**<u>statements</u>**

The district court improperly weighed Defendant-appellees' unsworn statements and hearsay as being dispositive whereas the proper standard on

dismissal motion is to take the allegations of the complaint as true. By assuming that some of the defendant-appellees' were "uninvolved" the district court overlooked the fact that an extortion conspiracy does not from the outside provide details of its inner workings. Moreover, that the amended complaint gave more than enough factual specifics for each and every defendant to admit or deny the allegations. Two defendant-appellees (Bryan Arce and Adrian Eisen) filed affirmations admitting to involvement, but claiming that others were "uninvolved". This is facially erroneous as they used and continued to use the name and firm name of Derek Smith, PC in papers against the plaintiff-appellant (see e.g. Dugue v. Watkins, SDNY 12 cv 07659 (DLC)). Moreover, the defendant-appellees have submitted affidavits claiming that they have no work together which is provably false using the district court's own PACER system (and plaintiff-appellant had already addressed some of defendant-appellees' joint filings in state court). While plaintiff-appellant certainly agrees with the parts of defendant-appellees' admissions that conform with his pleadings, plaintiff-appellant in no way agrees that the additional assertions of the defendant-appellees Eisen and Arce should be accepted at face value. They have admitted to the elements of extortion and should be considered unreliable and self serving.

Moreover, one of the firm defendants was sanctioned for misrepresenting a prostitute as an ingénue in the Eastern District of New York (appx. 55, 56)

In addition, the defendant-appellees' dismissal motions provided evidentiary exhibits which the district court claims not to have considered. Those exhibits included an audio disk which is missing from the record. The very inclusion of the exhibits should have warranted the motion being considered as a premature motion for summary judgment.

The district court failed to follow the proper standards in dismissing the RICO and antitrust claims. It treated the claims to a criminal standard rather than a civil standard. A civil plaintiff does not have access to search warrants, wiretaps, and investigative detention. The standard expressed by the district court is so strict and severe that it is doubtful even a conspirator would have enough information to plead a complaint. This is a civil proceeding and the civil standard is to allege first, based upon information and belief, and then discover the facts and this includes RICO complaints ("Plaintiff is not required to know at time of pleading all facts necessary to establish claim." <u>Commercial Cleaning Service v. Colin Serv. Sys.</u>, 271 F3d 374, 386 (2d Cir 2001)); not to prove beyond a reasonable doubt prior to filing the action. Specifically as regards a RICO pleading, similar to the one at bar, a plaintiff is not required include all legal entities of the wrongdoers and victims. "Here the district judge construed [lack of the above details] to justify dismissal of the action by reason of the plaintiff's failure to possess every fact needed to prove the essential elements of the claim (and more) at the time of the complaint without

any opportunity for discovery...We conclude that the plaintiff's failure to furnish all the information [in the above details], especially without opportunity for discovery, did not justify the grant of judgment to the defendant." (Commercial at 386, 387)

A civil defendant has only a short window to file, statutes of limitations of only one year exist in this case and every day's delay in discovery helps the defendant-appellees hide their misdeeds. The district court's pleading standard eviscerates the legislative purpose of the statutes.

In addition, the defendant-appellees had narrowed their analysis of plaintiff-appellant's complaint to only cover the actual paragraphs labeled "Racketeering Influenced and Corrupt Organizations" (par. 19-24) ignoring the incorporation of the facts above the title. The district court likewise did the same (appx 66, 70 fn1) and misapplied the circuit's standards. Clearly 50 to 100 victims per month can be extrapolated from defendant-appellees' court filings using simple math. Just as obviously the damage to plaintiff-appellant's business, income and reputation would follow such an all encompassing extortion plot and that was clearly stated.

This is not a case of painting a garden variety contract dispute as a racketeering enterprise. Here even the district court had to allow that claim of extortion was viable.

The district court further errs in stating that both parties agreed to the "rule of reason" analysis on plaintiff-appellant's antitrust claims. That is incorrect, it has always been plaintiff-appellants' contention that extortion is per se anti-competitive, in addition, it fails the rule of reason. The district court simply created, consistent with the claim of bias above, a heightened standard for antitrust pleading for this plaintiff-appellant.

There are no heightened pleading requirements for antitrust cases. See Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001); Dresses For Less, Inc. v. CIT Group/Commercial Servs., Inc., 2002 WL 31164482, at 6 (S.D.N.Y. Sept.30, 2002). Further, "[i]n antitrust cases in particular, the Supreme Court has stated that `dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.' "George Haug Co. v. Rolls Royce Motor Cars, Inc., 148 F.3d 136, 139 (2d Cir.1998) (quoting Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)); accord Todd, 275 F.3d at 198; Dresses For Less, 2002 WL 31164482, at *6.

The Second Circuit has held that "a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules." George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 554 (2d Cir.1977); accord In re Nine West Shoes Antitrust Litig., 80 F.Supp.2d 181, 185 (S.D.N.Y.2000).

34

Here the district court has simply taken the defendant-appellees' denials as dispositive without allowing plaintiff-appellant a chance for discovery.

## The district court erred in not allowing plaintiff-appellant to participate, ask questions or object at the recusal hearing

At the December 6, 2012, hearing before the district court the plaintiff-appellee's counsel was put on the stand. Despite a direct request by the plaintiff-appellee that he be allowed to participate in the prosecution of his own motion while his counsel was on the stand, the district court summarily refused his request without explanation.

Not being allowed to ask questions, refresh recollection, or direct examination deprived the plaintiff-appellant of a meaningful opportunity to present his case by directly examining his witness and submit supporting documentation.

## The district court erred in granting sanctions as there was no proper safe harbor letter by any of the defendant-appellees

The safe harbor letter served by the Rose defendant-appellees was directed to the original state complaint. The Rose defendant-appellees' safe harbor letter

was served on July 31, 2012 and was explicitly directed to the prior complaint filed in state court because a) all defendant-appellees' have claimed not to have received the amended complaint until August 6, 2012,[5] and the substance of the letter referred to the original complaint.

### The district court erred in granting sanctions by failing to have oral argument

The rule regarding oral argument before imposing sanctions is an important safeguard to make certain that all information and exhibits submitted are actually supported by first hand testimony. In this case there had been a prior complaint regarding emails doctored by the defendant-appellee. For the district court to simply select, on its own, an exhibit from the voluminous case record at face value without allowing the plaintiff-appellant an opportunity to argue, rebut, or possibly examine the supposed source is a violation of due process (Margo, Seigel, et al. v.

---

[5] In reality, the defendants did not receive the hard copies due to using false addresses on the docket sheet but they did receive the electronic ECF copies. However, the district judge explicitly informed the defendant-appellees' that an amended complaint had been filed on July 27, 2012, in its order dated August 2, 2012 (appx. 8 dkt 18) denying the Eisen defendants' request for sanctions.

Weiss, Peretti, et al., 213 F3d 55, 64 (2d Cir 2000), "[t]here is, however, a difference between an evidentiary hearing and a hearing at which a subject is allowed to present oral argument." Schlaifer Nance & Amp v. Estate of Warhol, 194 F3d 323, 335 (2d Cir 1999)).


**The district court erred in granting sanctions as there is merit to the complaint**

The standard for a sanctionable complaint is that it is objectively frivolous (Fishoff v. Coty, 643 F3d 647, 654 (2d Cir 2011)). Sanctions may not be imposed unless utterly lacking in merit (Storey v. Cello Holdings, 347 F3d 370 (2d Cir 2003)). Here the district court has imposed sanctions when it failed to declare the complaint frivolous in the November 19, 2012, order dismissing it. The district court even allowed that the (attempted) extortion claim was viable ("instance of extortion plausibly alleged in the complaint is the extortion of the plaintiff that occurred in May of 2012." Appx. 41). Moreover, the district court itself had to rely on foreign precedent to establish a basis for dismissing the RICO claim by declaring the first and second criminal acts duplicative when in fact they have disparate elements and involved multiple acts apart from each other. Once again the district court has confused civil RICO with criminal RICO ("'RICO conviction

37

cannot be based solely upon this single act, even though that act may have violated two separate laws.' <u>United States v. Walgren</u>, 885 F.2d 1417, 1426 (9th Cir. 1989)" cited by district court appx 37). In the criminal law context the statute has to be read in conjunction with the considerable criminal law procedural and constitutional requirements. In <u>Walgren</u>, the defendant has double jeopardy and other principles at play. This is a civil case, those issues are not at play here in any event. How could an issue of first impression in this Circuit be considered frivolous when other circuits have wrangled over the issue? This Court must disallow the district court's use of sanctions to prevent counsel from arguing issues of first impression in this Court.

### The district court erred in not properly weighing the August 6, 2012 offer to discontinue without prejudice

Whether or not there was further email back and forth, the offer to discontinue was clearly rejected by defendant-appellees' attorney Jesse Rose. In addition, the email the district court relied on from its own review of the record was apparently taken out of context as it was sent weeks earlier than it was dated.

## **Conclusion**

For all the foregoing reasons, the district court's order dismissing the complaint should be reversed, the order that the defendant-appellees' motion to vacate the default should be reversed, the district court's order denying plaintiff-appellant's motion to recuse be reversed, and that the district court to assign a new judge for further proceedings on the merits,

Plaintiff-appellant Kevin Watkins, and his attorneys further respectfully request that the district court's order imposing sanctions be reversed, or in the alternative, that the amount of sanctions be limited to attorney's incurred fees for the time period after service of the amended complaint to the plaintiff-appellant's offer to discontinue the action without prejudice subject to discovery

, and for such other and further relief as the court may deem proper.

Dated: October 22, 2013

_____/s/_____

Anil Taneja, Esq., M.B.A. (AT-1760)
Attorney for Petitioner
244 5th Avenue 2nd Floor
New York, NY 10001
(646) 335-3256

## **Certification of Type-Volume Compliance**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(7)(B) and contains 7190  words.

Dated: October 22, 2013                           _____/s/_____

                                                  Anil Taneja, Esq.